JAMES F. McCOURT, TAX COLLECTOR OF THE CITY OF HARTFORD *v.* ANEMOSTAT CORPORATION OF AMERICA

SUPERIOR COURT     HARTFORD COUNTY     FILE No. 133169

Memorandum filed February 3, 1965

*Joseph Adinolfi, Jr.,* corporation counsel, and *Bourke G. Spellacy,* assistant corporation counsel, for the plaintiff.

*Rogin, Nassau, Caplan & Lassman,* of Hartford, for the defendant.

SHAPIRO, J. The plaintiff is tax collector for the city of Hartford. He has brought this action to collect taxes levied on property claimed to be owned by the defendant and used by it in the course of its business, and claimed to have been located in Hartford on July 1, 1961, and for a short time thereafter. Paragraph 1 of the complaint alleges that the plaintiff is the tax collector of the city of Hartford, and paragraph 2 alleges that on July 1, 1961, and for a short time thereafter and for a long time prior thereto, the defendant was engaged in the business of manufacturing in the city of Hartford. These are admitted by the defendant. The remainder of the complaint the plaintiff is left to prove or its allegations are denied. These relate to claims of the defendant, filing an affidavit on or about August 3, 1961, with Hartford's assessor setting forth the average amount of goods it had on hand in Hartford for the twelve months prior to July 1, 1961, and the furniture, fixtures and machinery, not for sale, on hand on that date; also that this property was assessed and taxes levied thereon in manner and form provided by law; the amount of the taxes levied; and that the plaintiff has made due demand for payment but the defendant has refused to pay the same and that said taxes, with interest and lawful charges, are still due and owing.

Pursuant to a special act, taxable property located in the city of Hartford is assessed against its record owner annually on July first, and, in the instance at hand, on July 1, 1961. 18 Spec. Laws 448.

On August 3, 1961, the defendant submitted a list of taxable property owned by it on July 1, 1961, in accordance with § 12-58 of the General Statutes. This was thereafter assessed in the name of the defendant, and the taxes concerned in this suit were levied thereon. Counsel for the defendant admitted that for years past the defendant filed annually such lists of taxable property owned by it on July first of each year. At the hearing on the herein motions, the plaintiff filed exhibits A, "Statement of leased equipment in my possession on July 1, 1961"; B, "Confidential report, Merchants and traders' personal property tax return, taxable year 1961"; C, "Confidential report, Merchants and traders' personal property tax return, taxable year 1961." All three were signed by F. A. Waechter, defendant's vice president. Exhibit A, above the signature, states that this is a complete listing of all leased equipment, et cetera, in defendant's possession as of July 1, 1961. Exhibits B and C declare above the signature, that the return was examined by the signer and to the best of his knowledge and belief is a true and complete return. While exhibit B does not have attached to it the portion thereof with Waechter's signature, defendant's counsel agrees that this man, as defendant's vice president, filed and completed these returns in the same manner as in previous years.

While the defendant filed its answer to the complaint on May 16, 1963, the plaintiff, on December 8, 1964, filed his motion for summary judgment together with his affidavit related thereto. Thereafter, on January 7, 1965, the defendant filed its affidavit and motion to amend its answer. The former claims that "between March 28, 1961 and June 28, 1961, Anemostat began phasing out its manufacturing operations in Hartford and moved a substantial part of its inventory and machinery, equip-

ment and tools to the Scranton plant where it commenced manufacturing operations on or about July 5, 1961. It completed its phasing out operations in Hartford on July 28, 1961." The further claim is made that when it commenced operations in Pennsylvania, it there became liable to that state's taxes and that created an undue burden on the defendant because of its relocation from Connecticut to Pennsylvania. The defendant's motion to amend seeks to add a special defense to its answer setting forth the claim that the tax imposed by the city is in violation of article I, § 8, clause 3, of the United States constitution and of the fourteenth amendment to it, and reasons are given in 1 through 6 of the proposed pleading.

The first question to determine is whether the defendant may, in this kind of action, offer a defense such as is here proposed. Our statutes provide two methods by which a taxpayer claiming to be aggrieved by the action of the assessors in overvaluing his property may seek relief. He may appeal to the board of relief and, if not satisfied with its action, to the Court of Common Pleas; General Statutes § 12-118; or he may bring an application to that court under the provisions of § 12-119. He cannot, in an action to collect the tax, contest the valuation placed upon his property. *West Haven* v. *Aimes,* 123 Conn. 543, 548-9. Section 12-161 permits the collection of taxes by suit, being "taxes properly assessed." In the case at hand, it is agreed that the defendant took no action under § 12-118 or § 12-119. Really, what the defendant seeks here by its proposed special defense is still a further remedy, on claimed constitutional grounds. In this regard, the court believes the defendant is placing the cart before the horse.

It is clear that the defendant failed to avail itself of relief from claimed excessive assessment by stat-

utory remedy. It cannot now cook up a broth surrounded by an aroma of violation of constitutional rights. It could be that this might avail the defendant, if after it paid its taxes to the plaintiff, under proper protest, it instituted suit to recover any amount to which it may be entitled. "There is no good reason why a person denying the legality of a tax should not have the right to a clear remedy by suit to recover it back, after it has been paid upon presentation of the tax bill by the collector. It has long been the law of this State that 'where a person pays taxes that are illegally imposed upon him whether paid by compulsory process or not, he may recover back the money.' . . . This court has repeatedly held that the tax may be paid and an action brought to recover it as money illegally received and retained . . . . The more orderly course is a compliance with the law by a payment, reserving the right to contest the validity of the required payment." *Bridgeport Hydraulic Co.* v. *Bridgeport,* 103 Conn. 249, 262-3.

Summary judgment procedure is designed to dispose of actions in which there is no genuine issue as to any material fact. *Richard* v. *Credit Suisse,* 242 N.Y. 346, 350; 6 Moore, Federal Practice (2d Ed.) § 56.04. A party is entitled to relief by summary judgment when the facts set forth in affidavits show there is no real issue of material fact to be tried. *General Investment Co.* v. *Interborough Rapid Transit Co.,* 235 N.Y. 133, 139; *Engl* v. *Aetna Life Ins. Co.,* 139 F.2d 469, 472. The purpose of the rule is to preserve the court from frivolous defenses and to defeat attempts to use formal pleading as means to delay the recovery of just demands. *Fidelity & Deposit Co.* v. *United States,* 187 U.S. 315, 320. The function of the trial court, in applying the summary judgment rules, is to determine whether an issue of fact exists but not to try that issue if it does exist.

*Norwood Morris Plan Co.* v. *McCarthy,* 295 Mass. 597, 603. If it appears that upon full inquiry a defense would not be found to exist, a summary judgment is warranted. *Rifkin* v. *Safenovitz,* 131 Conn. 411, 416. If the facts set forth in the counter affidavit show a defense, then the counter affidavit should not be stricken. *Perri* v. *Cioffi,* 141 Conn. 675, 680.

The counter affidavit as filed by the defendant is really an attempted collateral attack on the right of the city to collect its taxes. Such an attack is not permissible in this case. The reasons for this have already been stated. It follows that the plaintiff's motion to strike it is valid and should be granted. Therefore, the motion to strike out the defendant's counter affidavit is granted and the same is ordered stricken.

The motion to amend the answer indicates a "special defense" that is frivolous and without rule or reason to justify it. As stated earlier, if the defendant has any legal basis for being saved whole from paying this tax, the situation should be handled by provided statutory relief or by payment of the tax under protest and then suit brought to recover payment. Therefore, this proposed pleading is improper and the motion to file it is denied.

Finally, we come to the motion for summary judgment. Under the facts here, as already recited, the plaintiff is entitled to relief for summary judgment because the facts set forth in his affidavit, together with uncontroverted exhibits A, B and C, show that there is no real issue of material fact to be tried. The moving party is entitled to judgment as a matter of law. Practice Book § 303. Accordingly, a summary judgment may enter in favor of the plaintiff to recover of the defendant the sum of

$43,588.30, together with interest from November 20, 1964, to the date of judgment hereon.

Judgment may enter accordingly together with costs.